WISCONSIN RED PRESSED–BRICK COMPANY v. DAVID HOOD and Others.[1]

March 28, 1895.

No. 9095.

### Sale by Description—Implied Condition.

Plaintiff, the manufacturer, agreed to sell to H., and the latter purchased, a certain quantity of bricks, to be "of the grade known as 'common,' " which is a well-recognized kind of description in the market, "to be of good quality and equal to sample sent." *Held*, in the absence of a finding as to a sale by sample, that there was an implied condition of the contract, which was in writing, that the bricks should conform to the description, be of good material, and well made, according to the description, but none that they would answer the purpose for which they were purchased.

### Same—Latent Defect.

Where the manufacturer of an article sold in the market by description knowingly uses unsuitable and defective material in manufacturing, he is liable for any latent defect not disclosed to a purchaser.

### Same.

*Held*, that the court below erred in striking out certain evidence which had been received upon the trial of this cause.

Action in the district court for St. Louis county against David Hood, Hurd Refrigerator Company, and New Duluth Land Company to recover the price of bricks sold to Hurd, and to enforce a lien therefor on premises owned by the Land Company, which it had contracted to sell to the Refrigerator Company.  The complaint alleged that the bricks were used in the construction of a building on the

[1] Reported in 62 N. W. 550.

premises by Hood under a contract therefor with the Refrigerator Company. The answer of Hood claimed a lien for the balance due him under his contract with the Refrigerator Company. The case was tried before Moer, J., who found as conclusions of law that plaintiff was entitled to recover judgment against Hood for $920.50 and to a lien therefor, and that Hood was entitled to a lien for $3,-695.67. From an order denying their motions for a new trial Hood and the Refrigerator Company appealed. Reversed.

*White & McKeon,* for appellant Hurd Refrigerator Company.

*W. B. Phelps,* for appellant Hood.

*W. A. Lancaster,* for respondent.

COLLINS, J. The general nature of this triangular contest is stated in the opinion on a former appeal. 54 Minn. 543, 56 N. W. 165. A second trial having been had before the court, without a jury, findings of fact were made and judgment ordered for different specified amounts in favor of the plaintiff and defendant Hood, and for these amounts equal and co-ordinate liens were adjudged upon the real property in question. Thereupon the defendants Hurd Refrigerator Company and Hood separately moved for a new trial, and on the refusal of the court to grant their motions both appealed.

The assignments of error made by counsel for appellant first named are directed to rulings made by the court below when hearing the evidence, and, as a consideration of one of these assignments compels a reversal, we shall not go further into the case. One of the material issues made by the pleadings was as to the kind, quality, and grade of the bricks which plaintiff, the manufacturer, agreed to sell and deliver to the contractor Hood, and which he had agreed to purchase and receive, and whether plaintiff had complied on its part with the requirements of the contract in this respect, or had furnished and delivered a much inferior or worthless article; and it must be borne in mind that these bricks were to be shipped in carload lots, for immediate use in the walls of buildings then in process of erection for defendant company. Hood, in his answer to the complaint, alleged that he had contracted for bricks of the first quality, and in all respects fit and suitable for use in such buildings; that, as the bricks were received, they appeared to be of the quality agreed upon; that he relied upon such appearance; that he was un-

able to discover any defects, and so put them into the walls; but that there were latent defects in the bricks not apparent or discoverable until they had been placed in the buildings, and exposed to the wind, weather, and changes of temperature; and that by reason of these latent defects they were not of the quality agreed upon, nor of the value stipulated to be paid when the contract was made. In the answer made by defendant company this same defense was interposed, but in different language. It was averred that plaintiff agreed with Hood to furnish to him a grade of bricks known as "common," to be of good quality and equal to samples which had been sent by plaintiff's superintendent; that the bricks furnished and delivered were not of the grade known as "common"; that they were not of good quality, and that they were not equal to the samples, that they were valueless by reason of a hidden fault, or through a hidden defect, in their construction, which fault or defect could not be detected by mere inspection or examination; and that while the bricks were apparently good, and fit for use, they would disintegrate and fall to pieces upon exposure to the weather, after being put into the buildings. The substance of this defense was that, although the bricks appeared on inspection and examination to be up to the requirements of the contract as to grade and quality, they were not; that they were not of the grade known as "common," but of an inferior grade; that they were not of good quality, nor did they correspond with the samples; and that this inferiority and failure to comply with the contract conditions or requirements arose from hidden or latent defects, which could not be and were not detected or discovered until the bricks had been used in the buildings.

There was no finding that this was a sale by sample,—and of this no complaint is made by an assignment of error,—so that we shall consider the contract, as we did on the former appeal, as an executory sale, by the manufacturer, of a specific article of a well-recognized kind or description in the market, namely, a good quality of bricks of the grade known as "common." There was an implied condition of this contract that the bricks should conform to the description, be of good material, and well made, according to the description, but none that they would answer the purpose for which they were purchased. As to this the rule of caveat emptor applies.

Goulds v. Brophy, 42 Minn. 109, 43 N. W. 834. Part of the testimony stricken out related to an alleged defect in the clay used in making the bricks, and tended to show that plaintiff must have known of the unsuitability of the material. A good deal has been written on the subject, and the confounding of conditions precedent with implied warranties has resulted in great confusion and conflict in the decisions; but we hold the only just rule in such cases to be that, if a manufacturer knowingly uses unsuitable and defective material in the manufacture of an article sold in the market by description, he is liable for any latent defect not disclosed to the purchaser. Hoe v. Sanborn, 21 N. Y. 552; White v. Miller, 71 N. Y. 118. See, also, title "Implied Warranty," particularly paragraph 7, 10 Am. & E. Enc. Law, 85; also, Randall v. Newson, 2 Q. B. Div. 102, 19 Moak, Eng. R. 243.

On the trial there was considerable testimony offered and received, and some offered and rejected, with respect to hidden or latent defects in the bricks, but finally the court struck out all evidence theretofore received as admissible, under the allegations concerning hidden or latent defects, each of the defendants duly excepting. At the time of the ruling the court gave no reason for it, so far as is shown by the record before us, and we are at a loss to understand why the ruling was made. Counsel for respondent seeks to sustain it by urging that such testimony was inadmissible under the pleadings, because the allegation in the answer of the Hurd Company was that the hidden defect of which it complained was in the "construction" of the bricks, while all the evidence brought under the ruling showed, if anything, that the defect was in the clay used by plaintiff. If this was a fair statement of the allegations of the answer mentioned,—and we do not think it is,—the argument possesses no merit, for the word "construction" referred to the making of the bricks. They could be "constructed" or made, so as to be defective, by using poor or worthless clay, as well as by using defective machinery, or by the employment of incompetent workmen. Again, counsel's criticism of this answer does not reach that made by defendant Hood. No other suggestion is made by counsel as a ground for sustaining the ruling, and we have none in mind. If the bricks were not what plaintiff agreed to deliver, did not conform to the conditions of its contract as to kind, quality, or grade, and this was

visible when they reached the purchaser, or could then have been discovered by the use of ordinary means, the latter could have refused to accept them. No one can question this right. If, as alleged, they were apparently of the kind, quality, and grade contracted for, were used in the belief that they fully answered the conditions of the agreement in this respect, and it was then discovered that, by reason of latent defects of such a character as to mislead and deceive, having a fault which could only be determined and developed by exposure in the walls, the bricks did not conform to the conditions, as to kind, quality, or grade, on which they were purchased and used, the defense attempted was open to defendants. The testimony stricken out tended to prove part of such a defense, and was admissible under the pleadings.

We feel compelled, in conclusion, to allude to certain italicized language found in the brief of counsel for appellant Hurd Company, which was designed to and does reflect severely upon the trial court, and not only to express our surprise that it should appear as part of an argument presented to this court, but to say, further, that it is unworthy of counsel, uncalled for, and that on all occasions counsel must not forget to be respectful to the courts.

Orders reversed.